## SUPREME COURT.

ADAM BROWN and others agt. FREDERICK A. ASHBOUGH.

Where it appeared from the affidavits used on the motion, that the defendant left
the city of Hamilton, Canada, where he had resided and done business for sev-
eral years as a grocer, on the 24th of September, 1870—having always been a
British subject—and, having previously become insolvent and selling out his
business there, and come to the state of New York on the 26th of September,
with the intention of taking up his residence in this state, and on the 3d of Octo-
ber came to the city of Buffalo, with the intention, in good faith to reside therein
permanently; that he left Hamilton with the intention of not again returning
there as a resident; that just prior to his arrest he wrote to his wife (who was
then at Hamilton), that he had taken up his residence in Buffalo, and requested
her to come to him—he was then endeavoring to rent a house in Buffalo for him-
self and family, and that they, at the time of his arrest, were intending to move
to Buffalo, and would have done so, but for the arrest, the day after such arrest.
Held, that the attachment be set aside as unauthorized—the defendant was a resi-
dent of this state. (The question of residence and domicil discussed.)

*Erie Special Term, September,* 1870.

MOTION to vacate attachment granted upon the affidavit
of the plaintiff, Brown, that the defendant does not reside
in the state of New York, but that his house and place
of business is in the city of Hamilton, Canada.   The
causes of action, as stated in the affidavit, are upon several
promissory notes, given by the defendant to the plaintiffs
in Hamilton, Canada, where the parties reside; the plaintiffs
were and still are wholesale grocers, and the defendant was a
retail grocer from June, 1868, to September 24th, 1870, in
the city of Hamilton, where he resided with his family and
had so resided for many years previous.   The action was
commenced and the attachment issued October 11th.   The
grounds upon which the motion to vacate was made, were
that the defendant had ceased to be a resident of Canada,
and had, when the attachment was issued, became " a resi-

Brown agt, Ashbough.

dent of this state." A summary of the affidavits touching this question is given in the opinion.

John Douglas, *attorney for plaintiff*.
C. C. Sprague, *of counsel*.
Nichols & Robbins, *for defendant*.

Marvin, J.—The substance of the statement made by the defendant in his affidavit is, that on the 24th day of September, 1870, he left the city of Hamilton, Canada, and on the 26th came to the state of New York, with the intention of taking up his residence therein; that he arrived on that day in the city of Lockport, where he remained over night and a portion of the next day, and then went to Tonowanda and transacted some business, and remained there until October 3d, when he came to the city of Buffalo, with the intention, in good faith, to reside there permanently; that he left Hamilton with the intention of not returning thereto, but in good faith of taking, up his permanent residence in the city of Buffalo. He spoke of his brother's visit to him in Lockport, and his endeavors to persuade him to return to Hamilton, and his refusal to do so, and his declarations to his brother of his intention not to return, but to take up his residence in Buffalo; his brother visited him in Buffalo, October 3d, and a like interview was had with the like result, and that he stated to his brother his intention of having his wife and household goods removed to Buffalo, and he requested his brother to take steps to effect this; that October 3d, he took up his residence permanently in Buffalo, and ever since has resided in Buffalo. That just prior to his arrest he wrote to his wife that he had taken up his residence in Buffalo, and requested her to come to him; he was then endeavoring to rent a house in Buffalo for himself and family, and that his wife would have come to Buffalo to reside with him, within a day or two, if he had not been arrested. (The arrest was in

this action upon the alleged ground of fraud in contracting the debts.) That at these times, he did not anticipate the the commencement of any action against him. His brother, Roderick, made an affidavit confirming the statement of the defendant, as to the conversations between them at Lockport and in Buffalo. That the wife and family of the defendant, at the time of the arrest, were intending to move to Buffalo, and would have done so, but for the arrest, the day after such arrest.

The affidavits read in opposition to the motion, show that the defendant and his wife, and her father, were British subjects and resided for a long time in Hamilton, where the defendant was doing business, and where he had, with his family, a fixed residence; that his family remained until after the commencement of this action; that the defendant was insolvent, and that his effects in Hamilton are being administered under the insolvent laws there in force. That he left Hamilton the 24th day of September, for the United States, and a strong belief is expressed, that when the defendant went to the United States, he went there to see whether he could find a place to establish himself in business, and not with the intention of fixing his abode at any particular place, but with the view and intention of going about and searching from place to place, to see if he could discover any convenient place of residence.

This was an *action*, as appeared from the affidavit presented to the officer, in which an attachment was proper. It arose on contract for the recovery of money, and an attachment was proper " against a defendant who was not a resident of this state." If the defendant was at the time, a *resident* of the state, then the attachment was unauthorized.

The defendant's residence and domicil were certainly in Hamilton, Canada, on the 24th day of September, 1870, and they had, for a long time, been there. The defendant

Brown agt. Ashbough.

was born in Canada and was a British subject. One of the rules (the 16th) stated by *Story* (*Conf. of Laws*, 47), is that a domicil once acquired, remains until a new one is acquired. The instant the new one is acquired the previous domicil ceases. It is a rule that every person has a domicil somewhere, and he can have but one at the same time, for one and the same purpose (5 *Pick.*, 589). Residence is defined in *Burrill's L. D.*, to be " one who has a seat or settlement in a place ; one who dwells, abides, or lives in a place, an inhabitant, one who resides or dwells in a place for some time," &c. *Bouvier's L. D.* " Domicil is the place where a person has fixed his ordinary dwelling, without a present intention of removal." To constitute a domicil two circumstances must unite, viz.: actual residence and an intention to remain. *Bouvier* defines " residence " the place of one's domicil.

Chancellor WALWORTH in *Matter of Wrigley* (8 *Wend.*, 140), says *inhabitancy* and *residence* mean a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a *mere temporary locality* of existence.

By *Story's 7th Rule*, 45, if a man removes to another place, with an intention to make it his permanent residence, it becomes instantaneously his place of domicil.

The original domicil is not gone, until a new one has been actually acquired.

In this case I have no doubt the defendant left Canada (some of the affidavits say absconded), with a fixed intention not to return. He had been in business in Hamilton, something more than two years. He was insolvent. He says sold all his stock in trade. I also think he, at the time, intended to fix his residence in this state, he says in Buffalo. The abandoning of one's residence, even with the intention of not returning, is not ordinarily enough to destroy the domicil. Another domicil or residence must be acquired. Indeed under our statute the attachment goes against any

Brown agt. Ashbough.

one " who is not a resident of this state." My difficulty is
in deciding whether the defendant had, on the 11th day of
October, *became a resident* of the state. I have, with some
hesitation, come to the conclusion, that the defendant had
become a resident of the state. His *intention* to abandon
his residence in Canada, is clear, and it is, I think, equally
clear that he intended to establish a residence in this state.
The question is had he done so. Was his residence in
Buffalo actually *established*, so as to satisfy the rule of *actual
residence* and intention to remain. He had been *living*,
stopping in Buffalo from October 3d to October 11th. He
had avowed his settled purpose to remain there, he had
been making efforts to procure a residence for his family,
and a place for business—he had made some arrangements
for the removal of his family from Hamilton to Buffalo.
He had furnished no evidence, by conversations or other-
wise, of his intention to leave Buffalo for some other place,
or of any doubt about his remaining in Buffalo. It will
be seen on examining some of the cases (above referred to and
others), that the question was whether the residence, in a
particular place, had been established; whether Buffalo,
for instance, in the language of Chancellor WALWORTH, had
become " a fixed and permanent abode or dwelling place
for the time being" of the defendant, as contra-distinguished
from a mere temporary locality of existence. Upon this
question, *Frost* agt. *Brisbin,* 19 *Wend.,* 11 ; *Burrows* agt.
*Miller,* 4 *How.,* 349; *Lee* agt. *Stanley,* 9 *How.,* 272, may
be consulted. See, also 10 *How.,* 272; *Hurlbert* agt. *See-
ley,* 11 *How.,* 507. In some of the affidavits read in oppo-
sition to the motion the affiants express the belief that the
defendant went to the United States to see whether he could
find a place to establish himself in business, and not with
the intention of fixing his abode at any particular place, but
with the view and intention of going about and searching
from place to place, to see if he could discover any conven-

Brown agt. Ashbough.

ient place of residence. No facts are stated in support of this theory, and none appear in the case. As a question of fact, I think I must hold that the defendant had become a resident of Buffalo, and that his residence in Hamilton had ceased. It follows that the attachment must be set aside.